**IN THE UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| PHILADELPHIA INDEMNITY INSURANCE COMPANY, a Pennsylvania Corporation; | Case No.: 2:20-cv-01223-APG-VCF |
| Plaintiff, | **TEMPORARY RESTRAINING ORDER** |
| vs. | |
| RONALD S. JANKOV, an individual; DOE INDIVIDUALS 1 through 10, inclusive; ROE BUSINESS ENTITIES 11 through 20, inclusive; | |
| Defendants. | |

On August 11, 2020 I conducted a hearing on Philadelphia Indemnity Insurance Company's (Philadelphia) Motion for Temporary Restraining Order (ECF No. 8). Having reviewed and considered the papers and the arguments of counsel, I find and order as follows:

**I.   FINDING OF FACTS**

1. On January 12, 2016, defendant Ronald S. Jankov executed a General Indemnity Agreement (GIA) in favor of Philadelphia in consideration for Philadelphia issuing Bonds to Platinum Roofing, Inc. (Platinum).

2. Philadelphia presented documentation and a supporting declaration that beginning around May 2018, it issued the following Bonds:

> (1)   Performance and Payment Bond No. PB02762300165 in the penal sum of $748,008.00, with Platinum as principal and the Central Costa Sanitary District as obligee in connection with the Solids Conditioning Building Roof Replacement in Martinez, California.

      (2)    Performance and Labor and Material Payment Bond No. PB02762300186 in the penal sum of $325,948.00 with Platinum as principal and the Elk Grove Unified School District as obligee in connection with a construction project at elementary schools in the Elk Grove Unified School District in Elk Grove, California.

      (3)    Performance and Labor and Material Payment Bond No. PB02762300187 in the penal sum of $531,503.00, with Platinum as principal and the Elk Grove Unified School District as obligee in connection with the roofing repair at Mary Tsukamoto Elementary School.

      (4)    Subcontract Performance and Labor and Material Payment Bond No. PB02762300174 in the penal sum of $766,200.00 with Platinum as principal and Thomson Builders Corp. as obligee in connection with a construction project at the Wheeler Plaza in San Carlos, California.

      (5)    California Contractor's Bond No. PB02762300182 in the penal sum of $15,000, with Platinum, as principal, and the State of California as obligee.

3.    The GIA provides as follows in the pertinent part:

> **3. INDEMNITY** - Indemnitors [Jankov and Platinum] agree to indemnify and hold harmless Surety [Philadelphia] from and against any Loss[1] sustained or incurred: (a) by reason of having

---

[1] "Loss" is defined in the GIA as "[a]ny and all liability, losses, costs, expenses, and fees of whatever kind or nature that Surety may sustain or incur as a result of executing any Bond, or as a result of the failure of Principal or Indemnitors to perform or comply with this Agreement." GIA, Section 1(h). Loss includes but is not limited to "costs and expenses" and "legal fees." *Id.*

executed or being requested to execute any and all Bonds; (b) by failure of Indemnitors or Principals to perform or comply with any of the covenants or conditions of this Agreement or any other agreement; and (c) in enforcing any of the covenants or conditions of this Agreement or any other agreement. The Indemnitors' obligation to indemnify the Surety shall also apply to any Bond renewals, continuations or substitutes therefore.  In the event of payments by Surety, Indemnitors agree to accept vouchers, a sworn itemization, or other evidence of such payments as prima facie evidence of the fact and extent of the liability of Indemnitors to Surety in any demand, claim or suit by Surety against Indemnitors. . . .

**4. POSTING OF COLLATERAL** – Indemnitors agree to deposit immediately upon demand by Surety an amount equal to the greater of: (a) the amount of any reserve established by Surety in its sole discretion to cover any actual or potential liability for any Loss or potential Loss for which Indemnitors would be obliged to indemnify Surety hereunder; or (b) the amount of any Loss or potential Loss (including legal, professional, consulting, and expert fees and expenses) in relation to any claim or claims or other liabilities asserted against Surety as a result of issuing any Bond, as determined by the Surety in its sole discretion. . . .

**15. TERMINATION BY ANY INDEMNITOR** – Any Indemnitor wishing to terminate this Agreement must give Surety written notice by Registered Mail at least thirty (30) days prior to termination**.**  The termination will not affect Indemnitor's obligations hereunder with respect to any Bonds executed and issued prior to the termination of this Agreement by that Indemnitor.  The termination by any one Indemnitor shall not affect the liability of any other Indemnitor.  (Emphasis added except original in heading).

**16. EFFECT OF CHANGE IN STATUS/TRANSFER OF ASSETS** – Each Principal and Indemnitor agrees not to change or convert its respective individual, corporate or partnership status to the extent such change has the effect of limiting, reducing or shielding the liability of either the entity or its partners and/or officers hereunder, without the prior, express, written consent of Surety.  Should any Principal or Indemnitor so change its respective corporate or partnership status without the prior, express, written consent of Surety, Principal or Indemnitor agrees that such change in its status shall not limit, reduce or otherwise shield its obligations, its partners' and/or officers' obligations, to Surety which arise from this Agreement.  The Principal and Indemnitors hereby expressly waive as against

3

> Surety any and all defenses which may arise from such a conversion to a LLC, LLP or similar status.  Principal and Indemnitors acknowledge that the Surety relies upon the assets reflected in their financial statements in the issuance of Bonds, and agree not to dispose of or transfer said assets, except in the ordinary course of business, without the prior, express, written consent of Surety.  (Emphasis added except original in heading).
>
> **17.    NOTICE OF CHANGE IN RESIDENCE** - Each Indemnitor who is an individual agrees to give Surety written notice of any change in his/her principal residence within 30 days of the change of address.
>
> **25.    CONSTRUCTION OF AGREEMENT -** This Agreement [the GIA] shall be liberally construed so as to protect, exonerate, and indemnify Surety, and any ambiguity or inconsistency shall be construed in favor of Surety's rights and remedies.

4.    Philadelphia alleges it received claims from subcontractors and/or suppliers and/or trust funds alleging that Platinum defaulted on certain payment obligations and that these obligations were within Philadelphia's obligations under the respective Bonds.

5.    Philadelphia presented documentation and a supporting declaration that it received and paid claims against the Bonds as follows:

| Bond No. | Claimant Name | Claim Amount | Claim Amount Paid |
|---|---|---|---|
| PB02762300165 | Division of Labor Standards Enforcement | $120,983.84 | |
| PB02762300174 | Bay Area Roofers Health and Welfare Trust | $161,238.00 | |
| PB02762300182 | CSLB Interpleader | $7,500.00 | |
| PB02762300186 | Tremco, Inc. | | $136,857.36 |
| PB02762300186 | Board of Trustees of the Bay Area Roofers Trust Funds | $56,277.71 | |
| PB02762300187 | Tremco, Inc. | | $237,136.54 |

| PB02762300187 | Board of Trustees of the Bay Area Roofers Trust Funds | $62,416.74 | |
|---|---|---|---|
| Total | | $408,416.29 | $373,993.90 |

6. Philadelphia asserts it has paid claims against the Bonds in the total amount of $373,993.90 and has incurred expenses and attorney's fees in the total amount of $9,731,51. Philadelphia also asserts that it has recovered $72,083.95 from available contract funds, for total losses in the amount of $311,641.46.

7. Philadelphia anticipates that it may incur additional losses as a result of issuing the Bonds, as there are outstanding and unpaid claims in the amount of $408,416.29. Philadelphia continues to incur attorneys' fees and cost as a result of defending itself against claims and in prosecuting this indemnity action.

8. On May 20, 2019, Jankov advised Philadelphia that he was selling his interests in Platinum, and terminating his obligations under the GIA.

9. On October 3, 2019, Philadelphia demanded collateral security from Jankov:

> In accordance with the terms of the General Indemnity Agreement, demand is made that you deposit with Philadelphia Indemnity Insurance Company, the amount of $381,493.90, representing estimated liability of Philadelphia Indemnity Insurance Company by reason of issuance of the above bond. Collateral is to be deposited within ten (10) days from date of this letter. We reserve our right to make future demand for collateral, if necessary.

10. Jankov's attorney and Philadelphia's attorney exchanged letters and emails regarding claims and obligations under the GIA.

11. On November 7, 2019, Platinum stipulated to the appointment of a Receiver for Platinum, and a receiver was in fact appointed for Platinum.

12. Based on the Receivership Order, the Receiver took possession of Platinum's business operations and seized and took possession and control of all collateral, including accounts, inventory, equipment, deposit accounts, general intangibles, and the like.

13. Around June 26, 2020, Philadelphia wrote to Jankov again demanding that he post collateral security within ten days in the amount of $720,057.75 according to the terms of the GIA.

14. Jankov asserts he did not receive Philadelphia's June 26, 2020 letter until July 9, 2020. Philadelphia claims it sent the letter to the last known address it had for Jankov and that Jankov had not informed Philadelphia of any change to his address. Jankov claims that because he terminated the GIA, he reasonably believed he no longer had an obligation to inform Philadelphia of any address change.

15. Jankov has not posted collateral security, and opposes the entry of an injunction.

## II.    LEGAL CONCLUSIONS

16. The GIA is a legally enforceable contract. *See Insurance Company of the West v. Gibson Tile Company, Inc.,* 122 Nev. 455, 134 P.3d 698 (2006); *Transamerica Premier Insurance Company v. Nelson,* 110 Nev. 951, 955, 878 P.2d 314, 316 (1994); *Continental Casualty Co. v. Farnow,* 79 Nev. 428, 386 P.2d 90 (1963).

17. Because Jankov has failed to post collateral as requested, Philadelphia does not have an adequate remedy at law to protect the collateral security arrangement to which it is entitled in accordance with the GIA. *Milwaukie Construction Co. v. Glens Falls Ins. Co.*, 367 F.2d 964, 966 (9th Cir. 1966).

18. Without the requested relief, Philadelphia will not receive the collateral security to which it is entitled and will forever and irreparably lose its rights to the collateral. Philadelphia has a reasonable fear of dissipation of assets. *Safeco Ins. Co. of America v. Schwab*, 739 F.2d 431,

433 (9th Cir. 1984) ("Sureties are ordinarily entitled to specific performance of collateral security clauses."); *Hartford Fire Ins. Co. v. Universal Import, LLC.,* 2009 WL 4042699 *5 (D. Nev., Nov. 20, 2009).

19. Based on the clear language of the GIA, the facts and law clearly favor Philadelphia and Philadelphia has a high probability of success on the merits of its claim.

20. The balance of hardships favors Philadelphia for the issuance of a reasonable and limited injunction for the amount of the Bond claims paid by Philadelphia as opposed to a broad freezing of all assets.

21. The public interest favors Philadelphia as the public has an interest in the enforcement of contracts such as indemnity agreements at issue in this case.

22. Philadelphia has satisfied the four factor test for a TRO. *Winter v. NRDC,* 555 U.S. 7, 24 (2008).

23. Philadelphia has also met the standard for the issuance of a limited mandatory injunction. *Garcia v. Google, Inc.,* 786 F.3d 733, 740 (9th Cir. 2015).

I HEREBY ORDER that Philadelphia's Motion for Temporary Restraining Order **(ECF No. 8) is GRANTED in part**.

I FURTHER ORDER defendant Jankov to post $350,000.00 in collateral security by noon on Tuesday, August 18, 2020.

I FURTHER ORDER Philadelphia to post a $10,000.00 bond as security for the Temporary Restraining Order by noon on Tuesday, August 18, 2020.

I FURTHER ORDER that this Temporary Restraining Order goes into effect as of Tuesday, August 11, 2020 at 10:58 a.m.

I FURTHER ORDER that, based on the parties' subsequent stipulation (ECF No. 26), the August 21, 2020 hearing on the Motion for Preliminary Injunction (ECF No. 9) vacated.

DATED: August 21, 2020 *nunc pro tunc* August 11, 2020 at 10:58 a.m.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE